UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CLARENCE R. HULL JR., )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>CENTURION DETENTION )<br>HEALTH SERVICES, )<br>NURSE GILLIUM, )<br>DR. LOGAN, )<br>NURSE CORNETT, )<br>CORPORAL GUIZZOTTI, )<br>NURSE JOHNSON, )<br>TENNESSEE DEPARTMENT )<br>OF CORRECTION, and )<br>NORTHEAST CORRECTIONAL )<br>COMPLEX, )<br>)<br>Defendants. ) | No.: 2:20-CV-94-TAV-CRW |

## MEMORANDUM OPINION AND ORDER

The Court is in receipt of a pro se prisoner's amended complaint for violation of civil rights filed pursuant to 42 U.S.C. § 1983 [Doc. 9]. For the reasons set forth below, this action will proceed only as to Plaintiff's claims against Defendants Nurse Johnson, Nurse Cornett, Dr. Logan, and Corporal Guizzotti, in their individual capacities, for allegedly violating his Eighth Amendment rights by delaying proper medical care.

**I.  STANDARD**

Under the Prison Litigation Reform Act ("PLRA"), district courts must screen prisoner complaints and shall, at any time, *sua sponte* dismiss any claims that are frivolous or malicious, fail to state a claim for relief, or seek monetary relief against a defendant who

is immune from such relief. 28 U.S.C. § 1915A; *see also* 28 U.S.C. § 1915(e)(2)(B). The dismissal standard articulated by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the relevant statutory language tracks the language in Rule 12(b)(6)" of the Federal Rules of Civil Procedure. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). Courts liberally construe pro se pleadings and hold them to a less stringent standard than formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).

A claim for violation of 42 U.S.C. § 1983 requires a plaintiff to establish that a person acting under color of state law deprived him of a federal right. 42 U.S.C. § 1983.

## II. Amended Complaint Allegations

At approximately 7:00 p.m. on March 7, 2020, Nurse Johnson gave Plaintiff trazodone (Viagra), rather than Tylenol [Doc. 9 at 3, 5]. Plaintiff seeks to hold Nurse Johnson (in her individual and official capacities), Centurion Detention Health Services ("Centurion"), and the Northeast Correctional Complex ("NECX") liable for this incident [*Id.* at 3].

The next day, at approximately 9:00 p.m., Plaintiff told Nurse Johnson that he was having pain in his genitals and had experienced an erection lasting approximately

2

Case 2:20-cv-00094-TAV-CRW   Document 10   Filed 10/14/20   Page 2 of 12   PageID #: 27

twenty-four hours [*Id.* at 4]. Nurse Johnson asked if Plaintiff had filled out a sick call request, and Plaintiff told her that he had been trying, but officers had not been able to find one [*Id.*]. Plaintiff also told her that the pain was severe, and he needed to see a doctor or go to the emergency room, as he could barely walk or sit down [*Id.*]. However, Nurse Johnson told Plaintiff that the only way he would receive medical attention that night was if he was "layin[g] on the floor half dead," at which point Plaintiff told her that he might be dead by the next day if he did not receive medical attention that night, but she walked away while he was still talking [*Id.*]. Plaintiff seeks to hold Nurse Johnson (in her official and individual capacities), Centurion, and NECX liable for this incident [*Id.*].

The next day, at approximately 8:30 a.m., Nurse Cornett called Plaintiff to a medical room and asked him what was wrong [*Id.*]. Plaintiff told Nurse Cornett that he had not been able to sleep and could barely walk due to the pain in his penis and he had experienced an erection lasting since Saturday night (approximately 34 hours) [*Id.*]. Plaintiff showed Nurse Cornett his penis, and Nurse Cornett told Plaintiff that medical treatment is necessary for an erection lasting more than four hours to avoid disfigurement or removal of the penis [*Id.*]. As a result, Nurse Cornett told Plaintiff that he would be taken to the emergency room, after Nurse Cornett spoke to Dr. Logan [*Id.*]. However, Plaintiff never heard back from Nurse Cornett [*Id.*]. Plaintiff seeks to hold Nurse Cornett (in his official and individual capacities), the Tennessee Department of Correction ("TDOC"), and NECX liable for this incident [*Id.* at 4].

3

Throughout that same day, Plaintiff continued asking an officer if he had heard anything from a doctor or nurse, and the officer finally spoke to Nurse Cornett, who told the officer that he had informed Dr. Logan about Plaintiff's situation and did not understand why Plaintiff was not in the emergency room [*Id.* at 5–6]. Plaintiff then told the officer to call Corporal Guizzotti, and, when Corporal Guizzotti arrived, Plaintiff explained his situation, but after Corporal Guizzotti left to call Dr. Logan, he returned and told Plaintiff that the officer had already called the doctor for Plaintiff several times [*Id.* at 6]. Corporal Guizzotti also told Plaintiff that Dr. Logan was busy, and when he wanted to see Plaintiff, he would call [*Id.*]. However, Plaintiff states that he later learned in the infirmary that medical had called Corporal Guizzotti to bring Plaintiff to the infirmary at some point, but Corporal Guizzotti was busy and forgot [*Id.*]. Plaintiff seeks to hold Corporal Guizzotti (in his official and individual capacities), TDOC, and NECX liable for this claim [*Id.* at 5].

After shift change, a different corporal took Plaintiff to the infirmary, but the doctor had already left for the day [*Id.* at 6]. Instead of the doctor, Plaintiff was seen by Nurse Gillium, who told him that "[he] probably just needed to [masturbate]" [*Id.*]. Nurse Gillium also showed Plaintiff two pills, and when Plaintiff indicated he had taken the Viagra pill, Nurse Gillium informed him that the pill was Viagara, and stated that she was going to have to use a needle to remove the blood [*Id.* 6-7]. However, Nurse Gillium first called the doctor, who told her to send Plaintiff to the emergency room [*Id.*]. Plaintiff seeks to hold Nurse Gillium (in her official and individual capacities), Centurion, and NECX liable for this claim [*Id.* at 6].

4

At approximately 8:15 p.m., Plaintiff was shackled, handcuffed, and placed in a van for transport to the emergency room [*Id.* at 7]. However, a call came over the radio telling the transporting officer "to wait until count clear before" taking Plaintiff, which Plaintiff states was not usually complete until approximately 11:30 p.m. [*Id.*]. Plaintiff claims that he was left in the transport van for two-and-a-half hours, unattended and without anyone to alert about any emergency, before being taken to the emergency room that was approximately one and half hours away [*Id.* at 7–8]. Plaintiff seeks to hold TDOC and NECX liable for this claim [*Id.*].

Plaintiff also alleges that, on March 15, 2020, upon his return to NECX, he did not receive prescribed medications to treat his pain from two emergency surgeries and stitches on his penis that led to him having disfigurement and irreversible damage [*Id.* at 8]. Plaintiff seeks to hold Centurion and NECX liable for this claim [*Id.*].

Plaintiff next asserts that, on March 16, 2020, Dr. Logan changed his prescription to a different, less effective, painkiller, and seeks to hold Dr. Logan (in his individual and official capacities), Centurion, and NECX liable for this claim [*Id.*].

Plaintiff next alleges that TDOC, NECX and Centurion violated his constitutional rights by failing to provide competent staff and medical providers and asserts that these entities are liable for the acts and omissions of their employees under a theory of respondeat superior [*Id.* at 9].

As relief, Plaintiff seeks compensation for pain and suffering, emotional trauma, and past and future medical expenses [*Id.* at 10].

5

### III. ANALYSIS

#### A. Defendants NECX, TDOC, and Centurion, and Official Capacity Claims

Initially, NECX, TDOC, and their employees in their official capacities are not persons under § 1983, but instead are "arms" of the State of Tennessee. *Pleasant-Bey v. Tennessee Dep't of Corr.*, No. 2:15-cv-174, 2020 WL 5791789, at *6 (E.D. Tenn. Sept. 28, 2020); *see also Will v. Mich. Dep't of State* Police, 491 U.S. 58, 71 (1989) (holding that a suit against a state official in his or her official capacity is a suit against the official's office); Hix *v. Tennessee Dep't of Corr.*, 196 F. App'x 350, 355 (6th Cir. 2006) (TDOC is not a "person" within the meaning of § 1983); *Bostic v. Tennessee Dep't of Corr.*, No. 3:18-cv-562, 2018 WL 3539466, at *7 (M.D. Tenn. July 23, 2018) (holding that a correctional complex is a person, not a "person" or legal entity that can be sued under § 1983, and noting that a suit against the facility is, in reality, a suit against TDOC itself). Accordingly, NECX, TDOC, and their employees in their official capacity cannot be sued for monetary damages absent a waiver of Eleventh Amendment immunity. *Will*, 491 U.S. at 66.

Further, Plaintiff has set forth no facts in his amended complaint that allow the Court to plausibly infer that Centurion has a custom or policy that caused any violation of Plaintiff's constitutional rights. Thus, the amended complaint fails to state a claim upon which relief may be granted under § 1983 as to this entity as well. *See Street v. Corr. Corp. of Am.*, 102 F.3d 810, 818 (6th Cir. 1996) (holding that a private corporation acting under color of state law may not be liable under § 1983 for constitutional violations based upon

a theory of *respondeat superior*, but rather may be liable only where its custom or policy caused a constitutional violation) (quoting *Harvey v. Harvey*, 949 F.2d 1127, 1129-30 (11th Cir. 1992) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978))).

Further, to the extent that Plaintiff has sued Centurion employees in their official capacities, he has sued the entities employing them. *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (holding that claims against officials in their official capacity are effectively claims against the entity that employs them). However, as Plaintiff has failed to state a claim upon which relief may be granted under § 1983 as to those entities as set forth above, his claims against the individual Defendants in their official capacities likewise fail to state a claim upon which relief may be granted under § 1983.

Thus, the amended complaint fails to state a claim upon which relief may be granted as to Defendants NECX, TDOC, Centurion, and as to the individual Defendants, in their official capacities, and thus these Defendants and claims will be **DISMISSED**.

### B. Defendant Nurse Johnson

As to Nurse Johnson, nothing in Plaintiff's amended complaint allows the Court to plausibly infer that she deliberately, rather than negligently, dispensed Viagra, instead of Tylenol, to Plaintiff. Thus, this allegation fails to state a claim upon which relief may be granted under § 1983. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976) (holding that "a complaint that a physician has been negligent in diagnosing or treating a medical condition" is insufficient to support claim for deliberate indifference to a prisoner's serious medical needs under the Eighth Amendment, as "medical malpractice does not become a

7

constitutional violation merely because the victim is a prisoner"). As such, this claim will be **DISMISSED**.

However, Plaintiff's claim that he told Nurse Johnson that he had experienced an erection lasting approximately twenty-four hours, but she did not provide him with medical care, ultimately resulting in permanent disfiguration, allows the Court to plausibly infer that Nurse Johnson may have violated Plaintiff's Eighth Amendment rights. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *Estelle v. Gamble*, 429 U.S. 97, 107 (1976). Thus, this claim will proceed.

### C. Defendant Nurse Cornett

As set forth above, Plaintiff alleges that after he told Nurse Cornett about his medical condition, Nurse Cornett told Plaintiff that he needed to go to the emergency room, he was going to talk to Dr. Logan about Plaintiff's situation, and Plaintiff should be ready to go to hospital [Doc. 9 at 5–6]. Plaintiff also alleges that, when an officer later spoke to Nurse Cornett, he stated that he informed Dr. Logan about Plaintiff's situation and expressed surprise that Plaintiff had not been taken to the hospital [*Id.* at 6].

Based on these facts, Plaintiff has sufficiently alleged that Nurse Cornett perceived that Plaintiff faced "a substantial risk of serious harm," *Farmer v. Brennan*, 511 U.S. 825, 847 (1994), and needed immediate medical treatment, but did not ensure that Plaintiff received such medical treatment, and therefore, may have violated Plaintiff's rights under the Eighth Amendment. Accordingly, this claim will proceed.

8

### D. Defendant Nurse Gillium

As to Nurse Gillium, Plaintiff alleges that when she learned of Plaintiff's medical situation, she determined that he had taken the wrong pill and remarked that Plaintiff should masturbate, but ultimately contacted a doctor who told her to send Plaintiff to the emergency room, which she did [Doc. 9 at 6–7]. To the extent that Plaintiff alleges that Nurse Gillium's remark was inappropriate, that remark did not violate Plaintiff's constitutional rights. *Johnson v. Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004) (providing that harassment and verbal abuse, including "shameful and utterly unprofessional behavior," do not constitute the type of infliction of pain that the Eighth Amendment prohibits). Further, as it appears that Nurse Gillium contacted a doctor and sent Plaintiff to the emergency room after learning of Plaintiff's condition, the Court cannot plausibly infer that this Defendant disregarded any risk of harm to Plaintiff due to his medical condition. As such, the amended complaint fails to state a claim upon which relief may be granted under § 1983 as to Nurse Gillium, and she will be **DISMISSED**.

### E. Defendant Dr. Logan

Liberally construing Plaintiff's amended complaint in his favor, the Court can plausibly infer that on March 9, 2020, Dr. Logan may have perceived that Plaintiff was experiencing a medical issue that required immediate care but did not provide Plaintiff with that care, and thus, may have violated Plaintiff's Eighth Amendment rights. As such, this claim will proceed.

However, Plaintiff's claim that Dr. Logan later changed his medication to a less effective painkiller after Plaintiff's surgeries does not rise to the level of a constitutional violation. *See Darrah v. Krisher*, 865 F.3d 361, 372 (6th Cir. 2017) (holding that "[a] patient's disagreement with his physicians over the proper course of treatment alleges, at most, a medical-malpractice claim, which is not cognizable under § 1983") (citing *Estelle*, 429 U.S. at 107). Thus, this claim will be **DISMISSED**.

F. **Defendant Corporal Guizzotti**

As to Corporal Guizzotti, as set forth above, Plaintiff alleges that he told Corporal Guizzotti about his medical situation and Corporal Guizzotti went to call the doctor, but returned and told Plaintiff that an officer had already called the doctor, who was busy but would call for Plaintiff later [Doc. 9 at 6]. However, Plaintiff also alleges that when the infirmary did call for Plaintiff, Corporal Guizzoti was busy and forgot to send him [*Id.*].

Notably, based on the allegations in Plaintiff's amended complaint, despite his statements to Plaintiff, it is not clear that Corporal Guizzotti ever called the doctor about Plaintiff's condition. Thus, liberally construing Plaintiff's amended complaint in his favor, the Court can plausibly infer that Corporal Guizzotti may have perceived that Plaintiff was experiencing a medical issue that required immediate care but did contact any of the jail medical staff about Plaintiff's care, and thus, may have violated Plaintiff's Eighth Amendment rights.

Moreover, Plaintiff also alleges that Corporal Guizzotti failed to send Plaintiff to the infirmary when medical staff called for him, and specifies that he later "found out" in

10

the infirmary that this Defendant failed to bring him to the infirmary in response to this call because "he was dealing with something else and forgot" [*Id.*]. Liberally construing the amended complaint in Plaintiff's favor, the Court can plausibly infer that this infirmary call for Plaintiff came after Corporal Guizzotti knew of Plaintiff's condition. Moreover, Plaintiff does not specify the source of the information that Corporal Guizzotti "forgot" to send him to the infirmary in response to this call, such that the Court can construe it as a factual assertion from someone with personal knowledge, rather than an assumption on the part of medical staff. Thus, the Court will allow this claim to proceed at this time.

## IV. CONCLUSION

For the reasons set forth above:

1. Plaintiff's claims against Defendants Nurse Johnson, Nurse Cornett, Dr. Logan, and Corporal Guizzotti, in their individual capacities, for violation of his Eighth Amendment rights in delaying his ability to receive medical care will proceed;

2. All other claims and Defendants are **DISMISSED**;

3. The Clerk is **DIRECTED** to send Plaintiff service packets (a blank summons and USM 285 form) for Defendants Nurse Johnson, Nurse Cornett, Dr. Logan, and Corporal Guizzotti. Plaintiff is **ORDERED** to complete the service packets and return them to the Clerk's Office within twenty (20) days of receipt of this order. At that time, the summonses will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service. Fed. R. Civ. P. 4;

4. Service shall be made on Defendants pursuant to Rule 4(e) of the Federal Rules of Civil Procedure and Rule 4.04(1) and (10) of the Tennessee Rules of Civil Procedure, either by mail or personally if mail service is not effective;

5. Plaintiff is forewarned that if he does not return the completed service packets within the time required, the Court may dismiss this action;

11

6. Defendants shall answer or otherwise respond to the amended complaint within twenty-one (21) days from the date of service of process. If any Defendant fails to timely respond to the amended complaint, it may result in entry of judgment by default against tat Defendant; and

7. Plaintiff is **ORDERED** to immediately inform the Court and Defendants or their counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. TN L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE