UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE

| | |
|---|---|
| CLARENCE R. HULL, JR., | ) |
| Plaintiff, | ) ) ) |
| v. | ) No.: 2:20-CV-94-TAV-CRW ) |
| CPL. GUIZZOTI, NURSE JOHNSON, and NURSE CORNETT, | ) ) ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, a state prisoner, filed a pro se complaint for violation of 42 U.S.C. § 1983 that is proceeding as to his claims that Defendants failed to timely provide him medical care in violation of the Eighth Amendment while he was in the Northeast Correctional Complex ("NECX") [Doc. 10 p. 8–11]. On June 28, 2022, the Court denied Defendant Nurse Jamie Johnson's motion for summary judgment [Docs. 77, 112]. Now before the Court is Defendant Nurse Johnson's motion for the Court to reconsider its denial of this motion filed pursuant to Rule 54(b) of the Federal Rules of Civil Procedure [Doc. 117]. Plaintiff filed a response in opposition to this motion [Doc. 119], and Nurse Johnson filed a reply [Doc. 122]. For the reasons set for below, Nurse Johnson's motion for reconsideration [Doc. 117] is **DENIED**.

I.  BACKGROUND

In his amended complaint, which is the operative complaint in this action, Plaintiff alleges that in March 2020, he did not receive constitutionally adequate care for priapism,

and this caused him permanent injuries [Doc. 9]. As to Defendant Nurse Johnson, Plaintiff alleges in relevant part that on March 7, at approximately 7:00 p.m., Defendant Nurse Johnson gave him Viagra, rather than Tylenol [*Id.* at 3, 5]. Plaintiff further alleges that on March 8, at approximately 9:00 p.m., he told Defendant Nurse Johnson that he was having pain in his genitals and had experienced an erection lasting approximately twenty-four hours [*Id.* at 4]. Defendant Nurse Johnson asked if Plaintiff had filled out a sick call request, and Plaintiff told her that he had been trying, but officers had not been able to find one [*Id.*]. Plaintiff also told Defendant Nurse Johnson that his pain was severe, and he needed to see a doctor or go to the emergency room, as he could barely walk or sit down [*Id.*]. However, Defendant Nurse Johnson told Plaintiff that the only way he would receive medical attention that night was if he was "layin[g] on the floor half dead," at which point Plaintiff told her that he might be dead by the next day if he did not receive medical attention that night [*Id.*]. But Defendant Nurse Johnson walked away while he was still talking [*Id.*].

The amended complaint also alleges that on March 9, the day after Defendant Nurse Johnson denied his request for medical care, Plaintiff made multiple additional requests for medical treatment for his priapism but did not receive any such treatment until that evening, when he was sent to the hospital [*Id.* at 4–7]. As a result of these events, Plaintiff has "life altering disfigurement and irreversible damage" [*Id.* at 9].

The Court screened the amended complaint and allowed Plaintiff's claims that certain Defendants, including Defendant Nurse Johnson, violated his Eighth Amendment

2

rights by denying him medical care to proceed [Doc. 10 p. 7–8]. Defendant Nurse Johnson filed a timely motion for summary judgment arguing that (1) Plaintiff challenges the adequacy of the medical treatment he received but has no expert witness to testify that the delay in receiving treatment was detrimental to him; and (2) Plaintiff has no proof that Defendant Nurse Johnson was deliberately indifferent to his condition, particularly as she ended her employment with NECX on January 23, 2020, before the incidents underlying his complaint occurred [Doc. 77]. With this motion, Defendant Nurse Johnson filed a supporting Memorandum of Law [Doc. 78], Statement of Undisputed Material Facts [Doc. 79], her own affidavit [Doc. 77-1], and excerpts from Plaintiff's medical records filed under seal [Docs. 71–73, 84].

The Court denied this motion [Doc. 112]. In doing so, the Court noted that it treated Plaintiff's sworn amended complaint as an affidavit for purposes of summary judgment pursuant to *El Bey v. Roop*, 530 F.3d 407, 414 (6th Cir. 2008) (holding that a sworn complaint "carries the same weight" as an affidavit for purposes of summary judgment). The Court also noted that Plaintiff's deliberate indifference claims have both (1) an objective prong that requires Plaintiff to establish that he had a sufficiently serious medical need and (2) a subjective prong requiring the Plaintiff to establish that a prison official was deliberately indifferent to that need [*Id.* at 6–7 (citations omitted)]. The Court then found that although Defendant Nurse Johnson asserted that Plaintiff challenged the adequacy of the medical treatment he received and thus needed to present expert testimony to establish that the delay in him receiving medical treatment harmed him, she did not specify what

3

medical treatment Plaintiff received during the time relevant to his claim against her, nor did the Court find evidence of any such treatment [*Id.* at 8, 12 (citing *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011) (providing that "medical care that is 'so woefully inadequate as to amount to no treatment at all,' violated the Eighth Amendment")).

The Court additionally pointed out that while Defendant Nurse Johnson asserted that she was entitled to summary judgment because she was no longer employed at NECX on the dates of the events underlying Plaintiff's amended complaint, Plaintiff's sworn complaint alleged that Defendant Nurse Johnson denied his request for medical care, and Plaintiff pointed to medical records containing signatures from a nurse with the last name of Johnson [*Id.* at 10–11]. The Court noted that it could not make credibility determinations in ruling on a summary judgment motion or "say that Plaintiff's version of events is blatantly contradicted by the record solely on the basis of Defendant Nurse Johnson's contradicting affidavit" [*Id.* at 11]. The Court therefore held that the contradictory statements between Plaintiff and Nurse Johnson created a genuine issue of material fact that precluded the Court from granting summary judgment [*Id.* at 11–12].

Defendant Nurse Johnson then filed the instant motion for reconsideration pursuant to Federal Rule of Civil Procedure 54(b) [Doc. 117], accompanied by a memorandum in support [Doc. 118]. In her motion for reconsideration, Defendant Nurse Johnson does not argue that any intervening change in law or new evidence warrants reconsideration of the

4

Court's denial of her motion for summary judgment.[1] Rather, she argues that the Court's previous order denying summary judgment was based on clear error which must be corrected to prevent manifest injustice [*Id.* at 1]. More specifically, Defendant Nurse Johnson argues that Plaintiff's "'sworn' Amended Complaint should not have been considered as rebuttal evidence because it was made upon 'information, knowledge, and belief'" [*Id.*]. Defendant Nurse Johnson concedes that court may treat a verified complaint as an affidavit but argues that where Plaintiff's amended complaint is not based on personal knowledge, particularly as to her identity and employment status, it may not overcome a motion for summary judgment [*Id.* at 7–8]. Moreover, Defendant Nurse Johnson argues that, as Plaintiff failed to respond to her statement of undisputed material facts, the Court should have found that no genuine issue of material fact remained in this case [*Id.* at 7–9].

Also, as to the objective prong of the deliberate indifference claim, Defendant Nurse Johnson again argues that the Court should not have considered Plaintiff's amended complaint sworn and should have considered her statement of undisputed facts undisputed, and therefore asserts that the then-undisputed medical records establish that Plaintiff received medical care for his priapism on the first day that he complained of this issue [*Id.* at 12–13]. Based on this assertion, Defendant Nurse Johnson contends that Plaintiff challenges the adequacy of his medical care, and that her properly-supported motion for

---

[1] With her motion for summary judgment, Defendant Nurse Johnson filed a letter that she alleges to be a termination letter releasing her from her employment at NECX in January 2020 [Doc. 117-1]. But she does not argue that this letter is new evidence in her filings. Moreover, as this letter is unsworn, the Court cannot consider it for purposes of summary judgment. Fed. R. Civ. P. 56(c)(4); *Dole v. Elliot Travel & Tours, Inc.*, 942 F.2d 962, 968–69 (6th Cir. 1991).

5

summary judgment shifted the burden to Plaintiff to put forth verifying medical evidence to establish that the delay in him obtaining care caused him harm to satisfy the objective prong [*Id.* at 14–15].

Additionally, as to the subjective prong of the deliberate indifference standard, Defendant Nurse Johnson again argues that the Court should not have considered Plaintiff's verified complaint sworn and should have accepted the medical records and her statement of undisputed facts, in which she asserts that she did not work at NECX on the dates of the incidents underlying Plaintiff's complaint, as undisputed [*Id.* at 18]. Defendant Nurse Johnson therefore asserts that she logically could not have been deliberately indifferent to Plaintiff's serious medical needs because she was not at NECX when they occurred [*Id.*]. She further argues that because the medical records indicate that Plaintiff received medical care for his priapism on the first day on which he complained of it, he cannot demonstrate that any provider deliberately disregarded his serious medical need, as the subjective prong requires [*Id.* at 19].

In his response in opposition to Defendant Nurse Johnson's motion for reconsideration, Plaintiff points out that, in his sworn "Answer to Plaintiff's First Set of Interrogatories," Defendant Nurse Cornett states that Defendant Nurse "Jamey Johnson" was working with him during between March 6, 2020 and March 9, 2020, which is the relevant time period for the events in Plaintiff's amended complaint [Doc. 119 p. 1]. Plaintiff likewise points to a sick call request from signed by a Nurse Johnson [*Id.*]. Plaintiff also takes issue with the letter produced by Defendant Nurse Johnson as indicating

6

a different termination date that Defendant Nurse Johnson herself mentioned in her previous affidavit and points to another sick call form on May 25, 2020, signed by Nurse "Jamey Johnson" [*Id.* at 2]. Plaintiff further states that if the name and address that the Warden provided for Defendant Nurse Johnson was incorrect, the Court should issue an order for the Warden to provide the correct defendant [*Id.* at 3]. Plaintiff next points to a medical record from Franklin Woods Community Hospital in which Dr. Tongco indicates that aspiration of fluid from Plaintiff's penis during a surgical procedure was difficult, which Dr. Tongco attributes to the duration of Plaintiff's more than forty-eight-hour priapism [*Id.* at 3–4; *see also* Doc. 119 p. 14]. Plaintiff also argues that he has faced lasting and debilitating injury and mental anguish from the denial of treatment for his priapism [Doc. 119 p. 3–4].

Defendant Nurse Johnson filed a reply on August 24, 2022 [Doc. 122]. In her reply, Defendant argues that Plaintiff is untimely attempting to present evidence to refute her motion for summary judgment, and that his response and the related filings are insufficient to do so [*Id.* at 3].

## II. STANDARD OF REVIEW

The Sixth Circuit has recognized that district courts may revise interlocutory orders under Federal Rule of Civil Procedure 54(b). *Rodriguez v. Tenn. Laborers Health & Welfare Fund*, 89 F. App'x 949, 959 (6th Cir. 2004) (holding "[d]istrict courts have authority both under common law and Rule 54(b) to reconsider interlocutory orders"); *Palmer v. Bagley*, 330 F. App'x 92, 105 (6th Cir. 2009) (observing, in a habeas case, that

7

a district court can revise a non-final order under Rule 54(b) "at any time prior to final judgment"). However, courts generally only reconsider interlocutory orders where "there is (1) an intervening change of controlling law; (2) new evidence available; or (3) a need to correct a clear error or prevent manifest injustice." *Rodriguez*, 89 F. App'x at 959 (citation and footnote omitted). Although Rule 54(b) allows courts "to afford such relief…as justice requires," *id.*, "[j]ustice does not require that the district court grant reconsideration on an issue that would not alter its prior decision." *Kirk v. Corr. Corp. of Am.*, No. 1:16-00031, 2017 U.S. Dist. LEXIS 116961, at *9 (M. D. Tenn. July 26, 2017) (citing *Rodriguez*, 89 F. App'x. at 959–60).

A clear error of law occurs when the Court applies incorrect law to the facts. *Kelso v. City of Toledo*, 77 F. App'x 826, 832 (6th Cir. 2003). "The clear error standard is easier to satisfy [than the plain] error because a party does not have to prove that the error affected a substantial right or the fairness, integrity, or reputation of the judicial proceedings." *United States v. Atkins*, 843 F.3d 625, 634 n. 2 (6th Cir. 2016) (citation omitted).

## III. ANALYSIS

### A. Plaintiff's Sworn Complaint

First, the crux of Defendant Nurse Johnson's argument that the Court's decision to consider Plaintiff's complaint "sworn" was clear error is that, because Plaintiff swears that his amended complaint "is true to the best of [his] knowledge, information, and belief," [Doc. 9 p. 10], it cannot overcome her properly-supported motion for summary judgment, as it is unclear what matters in the amended complaint are based on Plaintiff's personal

8

knowledge, rather than information and belief, and Plaintiff cannot have personal knowledge of her identity or employment status. The Court disagrees.

Rule 56(c)(4) requires in relevant part that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be based on personal knowledge." Fed. R. Civ. P. 56(c)(4). To support her argument that Plaintiff's amended complaint fails to meet this standard, Defendant Nurse Johnson relies on a case in which the United States District Court for the Middle District of Tennessee found that where the plaintiff's complaint included the same verification as Plaintiff's amended complaint herein,[2] and the plaintiff did not indicate that his assertions in that complaint that a defendant had allowed people from other housing units to enter a different housing unit, "failed to ensure [the plaintiff's] emergency call button worked properly, and participated in a CoreCivic custom of making inmate housing sanctions disappear" were based on his personal knowledge, the verified complaint did not preclude a grant of summary judgment. *See Polk v. Parker*, No. 3:20-CV-00069, 2022 WL 866336, at *8 (M.D. Tenn. Mar. 1, 2022) (noting that "[c]ourts . . . must evaluate whether claims in affidavits submitted at summary judgment are made from personal knowledge) (citing *Totman*, 391 F. App'x at 463, and *Alpert v. United States*, 481 F.3d 404, 409 (6th Cir. 2007)).

To support this finding, the *Polk* Court cited *Totman v. Louisville Jefferson Cnty. Metro. Gov't*, a case in which the Sixth Circuit found that where a plaintiff swore that his

---

[2] Notably, Plaintiff filed his amended complaint on the form the Court provides for civil rights complaints on its website [Doc. 9]. https://www.tned.uscourts.gov/sites/tned/files/forms/complaint_revised.pdf (last visited November 14, 2022).

9

complaint "[was] true and correct to the best of [his] knowledge and belief" . . . [this] indicate[d] that the allegations of the complaint [went] beyond [the plaintiff's] personal knowledge and extend to matters within [his] belief," and that certain allegations in that complaint therefore were insufficient to defeat a properly-supported motion for summary judgment. 391 F. App'x 454, 464 (6th Cir 2010). Specifically, in *Totman*, the plaintiff swore that his complaint was "'true and correct to the best of his knowledge and belief'" and alleged in that complaint that certain officers, including Officer Hornback, had used excessive force against him in two separate events. *Id.* at 463–65. But the plaintiff then testified at a deposition that he was unsure who had beat him during the two excessive force events, and further testified that he was unsure whether Officer Hornback was present for the second excessive force event. *Id.* at 464. Also, Officer Hornback filed sworn proof that he did not use excessive force against the plaintiff, and the plaintiff did not respond by presenting evidence that Officer Hornback had used excessive force against him. *Id.* The Sixth Circuit therefore found that the plaintiff's complaint allegations regarding Officer Hornback beating him were inadmissible speculation that did not preclude granting Officer Hornback summary judgment. *Id.*

But *Totman* and *Polk* are materially distinguishable from the issue at bar in this case. Specifically, unlike the *Totman* and *Polk* plaintiffs, Plaintiff's relevant allegations in his amended complaint against Defendant Nurse Johnson relate to her failure to provide him medical care in response to his request, which is a matter that axiomatically would be within Plaintiff's personal knowledge. Also, unlike in *Totman*, Defendant Nurse Johnson

10

has not pointed to sworn evidence in the record establishing that Plaintiff is unsure whether she failed to provide him medical treatment.

Further, while Defendant Nurse Johnson asserts that she was not present at NECX at the time of Plaintiff's injuries such that Plaintiff's identification of her as the nurse who failed to treat him cannot be based on his personal knowledge, again, the only sworn proof she has presented to support this argument is her own affidavit. But as Plaintiff points out, it was counsel for the Tennessee Department of Correction who provided the Court with Defendant Nurse Johnson's information for service of the complaint on her in response to Court's order requiring the NECX Warden to do so [Doc. 34; Doc. 35 p. 1]. And Plaintiff has filed a sworn statement from Defendant Cornett indicating that he recalls himself and "Jamey Johnson" working at NECX during the time period underlying Plaintiff's complaint [Doc. 119 p. 8].

Regardless, even if the Court only considers Plaintiff's sworn amended complaint, the medical records, and Defendant Nurse Johnson's affidavit, the Court again finds that the record does not so blatantly contradict Plaintiff's assertion that Defendant Nurse Johnson failed to provide him medical care that it entitles Defendant Nurse Johnson to summary judgment. And the Court will not make a credibility determination at the summary judgment stage.

### B. Statement of Undisputed Facts

Defendant Nurse Johnson's argument that the Court should have accepted her statement of undisputed facts as undisputed due to Plaintiff's failure to properly respond

thereto likewise is unpersuasive. Specifically, while Rule 56(e)(2) authorized the Court to consider Defendant Nurse Johnson's statement of undisputed facts as undisputed based on Plaintiff's failure to properly address them in a response, it does not require the Court to do so. Fed. R. Civ. P. 56(e)(2) (providing that where a party "fails to properly address another party's assertion of fact as required by Rule 56(c), the court may . . . consider the fact undisputed [and] grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it; or . . . issue any other appropriate order"). And Rule 56(c)(3) specifically allows the Court to consider materials in the record other than those on which the parties rely in deciding whether to grant a motion for summary judgment. Fed. R. Civ. P. 56(c)(3).

Additionally, the Sixth Circuit has noted that a district court cannot grant summary judgment in favor of a movant simply because the adverse party did not respond. *Stough v. Mayville Cmty. Sch.*, 138 F.3d 612, 614 (6th Cir. 1998). Rather, the court must, at a minimum, examine the motion to ensure that the movant has met its burden. *Id.* In doing so, the court "must not overlook the possibility of evidentiary misstatements presented by the moving party." *Guarino v. Brookfield Twp. Trs.*, 980 F.2d 399, 407 (6th Cir. 1992). The court must "intelligently and carefully review the legitimacy of [] an unresponded-to motion, even as it refrains from actively pursuing advocacy or inventing the *riposte* for a silent party." *Id.*

Accordingly, the Court does not always accept statements of undisputed facts to support a motion for summary judgment as true where a pro se party fails to specifically

12

respond thereto, and Defendant Nurse Johnson has not established that the Court's decision not to do so with regard to her statement of undisputed facts as undisputed was clear error.

### C. Objective Prong

As the Court noted above, the objective prong of Plaintiff's deliberate indifference claim requires Plaintiff to set forth proof that he had a sufficiently serious medical need. The Court previously summarized the applicable law for this issue as follows:

> Under the objective prong, the court must determine whether the plaintiff had a sufficiently serious medical need. *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008). A plaintiff may establish a serious medical need in two ways: (1) by showing that the injury was so obvious that even a layperson would easily recognize the need for medical treatment; or (2) if the injury was less obvious or the prisoner challenges a denial of a certain medical treatment, by showing the detrimental effect of a delay in treatment. *Blosser v. Gilbert*, 422 F. App'x 453, 460 (6th Cir. 2011) (citing *Blackmore* [*v. Kalamazoo Cnty.*, 390 F.3d 890, 897 (6th Cir. 2004]).
>
> Where a prisoner's claim arises from an injury that a layperson would easily recognize required a doctor's attention, the prisoner does not need to present medical evidence to establish that a delay in treatment harmed him. *Blackmore*, 390 F.3d at 899–900 (internal quotation marks and citations omitted). But where the claim arises out of "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *id.* at 898, the prisoner must "place verifying medical evidence in the record" to establish that the delay in treatment had a detrimental effect on his condition. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (quoting *Napier v. Madison Cnty.*, 238 F.3d 739, 742 (6th Cir. 2001)).

[Doc. 112 p. 6–7].

Defendant Nurse Johnson argues that she is entitled to summary judgment on this issue because the Court should have (1) accepted her statement of undisputed facts, which asserts that Plaintiff received medical treatment on the first day on which he complained of priapism, as true and (2) therefore required Plaintiff to place verifying medical evidence

13

in the record to establish that the delay in him receiving medical treatment for this issue harmed him. These arguments are unpersuasive.

First, as set forth above, the Court declines to accept Defendant Nurse Johnson's statement of undisputed facts as true and considers Plaintiff's relevant statements regarding her in his amended complaint as sworn. And in his amended complaint, Plaintiff alleges in relevant part that, on the evening of March 8, he told Defendant Nurse Johnson that his erection had lasted twenty-four hours and was so painful he could barely walk, but he did not receive medical treatment for his priapism until approximately twenty-four hours after this interaction [*Id.* at 3–7]. Thus, as the Court noted in its previous order, Defendant Nurse Johnson has not established that Plaintiff received any medical treatment for his priapism in the time relevant to his claim against her.

Moreover, the Court additionally finds that a layperson easily would have recognized that Plaintiff needed a doctor's attention on the evening of March 8 based on his statements to Defendant Nurse Johnson, given the severity of the pain that Plaintiff told Defendant Nurse Johnson he was experiencing, as well as the prevalence of television commercials warning that erections lasting more than four hours require medical attention. *Cf. Lance v. Morris*, 985 F.3d 787, 792, 794 n.3 (10th Cir. Jan. 19, 2021) (noting that the jail guard defendants conceded that the plaintiff's priapism that lasted three days was a serious medical need and that several jail guards testified "that priapism is a serious medical need that requires treatment"); *but cf. Cruz v. Dart*, No. 12-CV-6665, 2017 WL 1021992, at *2, *7–8 (N.D. Ill. Mar. 16, 2017) (noting that the parties agreed that priapism

14

was a serious medical need but finding that the plaintiff had not established that the jail guards would have recognized an obvious need for medical care based on the plaintiff's three to four hour priapism). As such, Plaintiff did not need to present medical proof that the delay in him receiving treatment harmed him to avoid the Court granting Defendant Nurse Johnson's motion for summary judgment based on the objective prong of his claim. *Blackmore*, 390 F.3d at 895.

### D. Subjective Prong

The Court previously summarized the relevant law regarding the subjective prong of Plaintiff's deliberate indifference claim as follows:

> The subjective component requires proof that the prison official acted with deliberate indifference. *Carter v. City of Detroit*, 408 F.3d 305, 312 (6th Cir. 2005), *abrogated on other grounds in Pearson v. Callahan*, 555 U.S. 223 (2009). Deliberate indifference is more than mere negligence—it requires a mental state amounting to criminal recklessness. *Santiago*, 734 F.3d at 591 (citing *Farmer v. Brennan*, 511 U.S. 825, 834, 839–40 (1994)). To meet this subjective standard, the defendant must have: (1) "perceived the facts from which to infer substantial risk to the prisoner," (2) "draw[n] the inference;" and (3) "then disregarded that risk." *Id.* at 591 (quoting *Comstock v. McCrary*, 273 F.3d 693, 703 (6th Cir. 2001)).

[Doc. 112 p. 7].

As set forth above, Defendant Nurse Johnson argues that the Court should reconsider its finding that she was not entitled to summary judgment on this issue based on her assertions that the Court should not have considered Plaintiff's amended complaint sworn and should have accepted both Plaintiff's medical records, which indicate that Plaintiff was evaluated and received medical care for his priapism on the first date on which he complained of it, and her statement of undisputed facts, including her assertion that she

15

did not work at NECX on the relevant dates, as undisputed. Defendant Nurse Johnson further asserts that Plaintiff cannot establish that any provider was deliberately indifferent to his serious medical need because the medical records show that he received medical care for his priapism on the day on which he first complained of it.

But the Court has already declined to consider Defendant Nurse Johnson's statement of undisputed facts as undisputed for the reasons set forth above. And even accepting Defendant Nurse Johnson's summary of Plaintiff's relevant jail medical records as true, those records show only that on March 9, two nurses evaluated Plaintiff and referred him for additional medical care, and that Plaintiff eventually was sent to the hospital that day [Doc. 118 p. 18–19]. They do not indicate that any medical provider provided any medical treatment for Plaintiff's priapism until approximately twenty-four hours after Plaintiff alleges in his sworn complaint that he asked Defendant Nurse Johnson for medical care for that issue because he was in severe pain and had had an erection for twenty-four hours [*Id.*; Doc. 9 p. 3–4]. And Plaintiff does not challenge the adequacy of the medical care he ultimately received for his priapism in the hospital in this action [*See*, *generally*, Doc. 9].

In other words, while Defendant Nurse Johnson seeks to frame Plaintiff's claim against her to challenge the adequacy of his medical care, this argument ignores Plaintiff's sworn assertions in his amended complaint that jail officials and nurses, including Defendant Nurse Johnson, at most evaluated but did not provide any medical treatment for his priapism until the evening of March 9, which was forty-eight hours after the issue began and approximately twenty-four hours after he first complained of this issue to Defendant

16

Nurse Johnson, and that when Plaintiff eventually received medical care at the hospital, that medical care could not reverse the permanent disfigurement and damage Plaintiff had suffered due to his serious medical need that a layperson easily would have recognized as requiring a doctor's attention on the evening of March 8.

As such, the Court declines to reconsider its decision not to grant Defendant Nurse Johnson summary judgment based on these arguments.

## IV. CONCLUSION

For the reasons set forth above, Defendant Nurse Johnson's motion for the Court to reconsider its decision not to grant her summary judgment [Doc. 117] is **DENIED**.

**IT IS SO ORDERED**

**ENTER:**

s/ Thomas A. Varlan
UNITED STATES DISTRICT JUDGE